UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PAUL DIPIETRO and MARIE L. ZWEIG,

Plaintiffs,

- against -

NEW YORK STATE UNIFIED COURT SYSTEM, *et al.*,

Defendants.

**MEMORANDUM DECISION AND ORDER**

22-cv-7943 (BMC)

**COGAN**, District Judge.

Plaintiffs DiPierro[1] and Zweig, former employees of defendant New York State Unified Court System ("UCS"), bring this action for religious discrimination under Title VII and 42 U.S.C. § 1983, as well as violations of the Equal Protection Clause of the United States and New York Constitutions. Also named as defendants are the Office of Court Administration, described as the "administrative arm of UCS," and the following current or former judicial officers of the State of New York or members of the court-appointed Vaccination Exemption Committee: Janet DiFiore; Lawrence K. Marks; Justin Barry, Nancy Barry, Rosemary Martinez-Borges, Jennifer DiLallo, Shawn Kerby, Keith Miller, Linda Dunlap-Miller, Scott Murphy, Michelle Smith, John Sullivan, and Dan Weitz. The amended complaint alleges that plaintiffs requested an exemption on religious grounds from the mandatory vaccination requirement (the "vaccine mandate" or the

[1] Plaintiff Paul DiPierro is named as "Paul DiPietro" in the caption of the Amended Complaint. This appears to be a typo, as he is referred to as "DiPierro" throughout the Amended Complaint and in subsequent memoranda.

"mandate") imposed by defendants during the COVID-19 pandemic and that plaintiffs' constitutional rights were violated by the denial of an exemption.

The case is before me on defendants' motions to dismiss the amended complaint.[2] The motions are granted on the ground of *res judicata* because both plaintiffs previously brought hybrid Article 78 actions in state court arising out of the same facts they raise here and lost.

## BACKGROUND

### I. The Vaccine Mandate and Plaintiffs' Termination

Plaintiff DiPierro was a Senior Court Officer and plaintiff Zweig was a Principal Appellate Court Attorney employed by UCS. DiPierro is Catholic and Zweig is Episcopalian.

On August 25, 2021, defendant DiFiore, who was then Chief Judge of the New York State Court of Appeals, and defendant Marks, who was Chief Administrative Judge, published a mandatory vaccine requirement for all judicial and non-judicial personnel in the New York State court system. The mandate required that any employee who did not obtain a religious exemption or a vaccination by September 27, 2021 would be prohibited from reporting to work and would face disciplinary action.

DiPierro timely submitted an "Affidavit of religious objection to COVID-19 Vaccination" and a "Request for Religious Exemption From COVID-19 Vaccine Personal Statement Form." In these forms, DiPierro swore under oath that he objected to taking the vaccine based on "the catechism of the [Catholic] Church." His submission "explained that the catechism is what guides his consciences [sic] and that it encompasses his direct relationship

[2] The institutional defendants and individual defendants brought separate motions to dismiss, but they largely overlap with respect to their *res judicata* arguments.

with God." He cited and quoted the portions of the catechism on which he was relying. He stated that "when a person listens to his conscience, the prudent man can hear God speaking." He concluded: "[t]aking any of these vaccines would be a violation of Catholic Doctrine on the duty to adhere to moral standards. Therefore, under the teachings of the Catholic Church to which I am religiously and morally bound, I submit this exemption from the vaccination."

UCS summarily denied DiPierro's request, and when he did not comply with the mandate, it ultimately terminated his employment.

Ms. Zweig also timely claimed a religious exemption. Her sworn statement stated that as an Episcopalian, she respects the sanctity of human life, which begins from conception, and she believed that the mandated vaccines were derived from aborted fetal cells. She therefore asserted that "[r]eceiving a COVID-19 vaccination at this time would violate my religious beliefs and practices."

UCS responded to Zweig seeking more information, but that request also gave her more information. The request for more information advised her that the fetal cell lines used to develop the vaccines were decades old, and that while some of the original cells may have been from a voluntarily aborted fetus, the cells used to manufacture the vaccines did not use any aborted fetal cells. UCS also inquired as to whether she had used specific common drugs (e.g., ibuprofen, acetaminophen) or had received other specific vaccines, all of which, it advised her, were developed from similarly originated fetal cell lines. Zweig responded with some negative and some positive answers, but said that to the extent she had used or continued to use such medicines, she was, and remained, of the view that they did not originate from lines of aborted fetal cells, unlike the COVID-19 vaccines, and thus continued to believe that her religious views prohibited her from receiving the vaccine.

UCS summarily denied Zweig's request for an exemption, and when she did not comply with the mandate, it ultimately terminated her employment.

Both plaintiffs filed complaints with the State Division of Human Rights, alleging that UCS had violated their "deepest held religious and spiritual belief" (DiPierro) and "sincerely held religious beliefs" (Zweig). SDHR found no probable cause to find that a violation of either of their rights had occurred.

## II. Article 78 Proceedings

### A. DiPierro's State Court Action

DiPierro, together with other petitioners, commenced a proceeding against UCS, OCS, Marks, Justin Barry (then Chief Administrator of UCS), and Nancy Berry in the Supreme Court, Steuben County, by filing a pleading entitled "Verified Petition and Complaint." A section near the beginning of this pleading, entitled "Nature of Action," stated that:

> This is a special proceeding brought under Article 78 of the CPLR and 42 U.S.C. §§ 1983, 1988 seeking injunctive relief for: (i) violations of Petitioners' rights under the United States and New York State Constitutions; (ii) challenges to the constitutionality and applicability of the vaccine mandate for employees promulgated by Respondents; and (iii) reimbursement of attorneys' fees, costs, and expenses incurred by Petitioners in seeking to protect against the violation of their rights.

The "Statement of Facts," as it pertained to DiPierro, was substantially the same as the allegations set forth in the instant case.

The "Seventh Cause of Action" was entitled "Violation of Constitutional Rights/First Amendment-Free Exercise Clause." It alleged that the vaccine mandate was subject to strict scrutiny, citing Fulton v. City of Philadelphia, 141 S. Ct. 1868 (2021), and asserted that the mandate, as applied to DiPierro and the other petitioners, violated the Free Exercise Clause of

the First Amendment. The "Eighth Cause of Action" sought recovery of attorneys' fees and costs pursuant to "42 U.S.C. § 1988(b)." In the prayer for relief, the pleading demanded, as to the Seventh Cause of Action, a declaratory judgment that the vaccine mandate was unconstitutional; a permanent injunction against enforcing the vaccine mandate; and an injunction permitting DiPierro and the other petitioners "to resume their employment with UCS in their former positions."

The case came before the court on the motion of petitioners for a preliminary injunction and the respondents' cross-motion to dismiss the complaint for failure to state a cause of action. The grounds for the motion for a preliminary injunction were that the vaccine mandate was arbitrary and capricious; that only the New York Legislature, not UCS, could implement such a requirement; and that the mandate violated the Free Exercise Clause of the First Amendment and was therefore void and unenforceable.

The court denied the motion for a preliminary injunction, rejecting each of the grounds offered, and granted the cross-motion to dismiss. Brignall v. N.Y.S. Unified Ct. System, No. 22-cv-241, 2022 WL 17543641 (N.Y. Sup. Ct. April 13, 2022). As to the First Amendment claim, the court found that the vaccine mandate was a "valid and neutral law of general applicability" and therefore was subject to rational basis review rather than strict scrutiny. Id. at *5. The court went through each of the petitioners' claims individually, explaining why each one failed. It held that DiPierro had "failed to state any nexus between his refusal to get the COVID-19 vaccine and his religious beliefs." Id. at *7. Applying rational basis review, the court upheld the mandate, but reasoned that even under strict scrutiny, the mandate would survive. The court therefore dismissed the petition and complaint.

DiPierro filed a motion for leave to renew his motion for a preliminary injunction based on new scientific evidence and new judicial decisions. The court denied this motion. He has appealed that denial.

### B. Zweig's State Court Action

Zweig, together with other "plaintiffs-petitioners," commenced a proceeding against the State of New York, UCS, Marks, Justin Barry, and Nancy Berry in the Supreme Court, Rockland County, by filing a "Verified Petition Pursuant to Article 78." This pleading alleged, as to Zweig, the facts set forth above describing her application for and UCS's denial of a religious exemption to the vaccine mandate. It contained three causes of action, the first of which argued that the mandate, as applied to these plaintiffs-petitioners, violated the New York state constitution and was arbitrary and capricious. However, the pleading also asserted the First Amendment as authority, arguing for the adoption of strict scrutiny in reviewing the mandate, and citing and discussing Fulton; Employment Division v. Smith, 494 U.S. 872, 884 (1990); Thomas v. Rev. Bd., 450 U.S. 707, 714 (1981); and United States v. Seeger, 380 U.S. 164, 185 (1965), as well as Second Circuit and district court authority, including Jolly v. Coughlin, 76 F.3d 468, 477 (2d Cir. 1996); Patrick v. LeFevre, 745 F.2d 153, 157 (2d Cir. 1984); and U.S. v. Lynch, 952 F. Supp. 167, 169 (S.D.N.Y. 1997). The prayer for relief demanded, among other things, "an award of reinstatement with compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, [and] punitive and/or exemplary damages."

The case came before the court on the petition and defendants-respondents' motion to dismiss for failure to state a cause of action. In its order denying the petition and granting the motion to dismiss, the court noted that "[p]etitioners point to federal case law that they assert

indicates once someone alleges that they sincerely hold a particular religious belief, any further inquiry into the validity of those beliefs violates the First Amendment." Ferrelli v. State, No. 22-cv-31506, 2022 WL 17543642, at *4 (N.Y. Sup. Ct. Aug. 02, 2022). Like the court in Brignall, the Ferrelli court concluded that rational basis analysis, not strict scrutiny, applied to Zweig's claim, based on its finding that the mandate was facially neutral and generally applicable. In reaching that conclusion, it relied on United States Supreme Court and Second Circuit authority and, in particular, a recent federal district court decision that had upheld the mandate against a First Amendment challenge, Ferrelli v. State of New York UCS, No. 22-cv-68, 2022 WL 673863 (N.D.N.Y. March 7, 2022).[3] Zweig has appealed the dismissal.

**DISCUSSION**

Defendants contend, among other things, that the resolution of the Article 78 proceedings in state court precludes plaintiffs from maintaining their claims here. "A challenge based on *res judicata* grounds may be properly raised in a motion to dismiss pursuant to Rule 12(b)(6)." Clarkstown Recycling Ctr., Inc. v. Parker, Chapin Flattau & Klimpl, LLP, 1 F. Supp. 2d 327, 329 (S.D.N.Y. 1998). In ruling on such a motion, the Court "is permitted to take judicial notice of public records, which includes complaints and other documents filed in federal court." Medcalf v. Thompson Hine LLP, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015).

The *res judicata* effect of a state court judgment in federal court is determined by the law of the state that rendered the judgment. New York v. Mountain Tobacco Co., 942 F.3d 536, 543 (2d Cir. 2019). Under New York law, *res judicata* "prevents a plaintiff from raising a claim that was or could have been raised in a prior suit." McKithen v. Brown, 481 F.3d 89, 104 (2d Cir.

[3] Plaintiffs' contention that Ferrelli was duplicative of the state court action bearing the same name is of no moment, as our plaintiffs were not parties to the federal action.

2007); Migra v. Warren City Sch. Dist. Bd. Of Educ., 465 U.S. 75, 81 (1984); Farbstein v. Hicksville Pub. Library, 323 F. Supp. 2d 414, 422-23 (E.D.N.Y. 2004). Moreover, "the mere pendency of an appeal does not prevent the use of the challenged judgment as the basis of collaterally estopping a party to that judgment in a second proceeding." Corsini v. Nast, 613 F. App'x 1, 3 (2d Cir. 2015) (citing Matter of Amica Mut. Ins. Co., 85 A.D.2d 727, 728, 445 N.Y.S.2d 820, 822 (2d Dep't 1981)).

To determine whether *res judicata* precludes subsequent litigation, a court must find that: "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same] parties or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (cleaned up); Kesten v. Eastern Sav. Bank, No. 07-cv-2071, 2009 WL 303327, *3 (E.D.N.Y. Feb. 9, 2009) (citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (under New York's "transactional" approach to claim preclusion, a claim should have been brought if it arises "out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief"). "New York courts apply a 'pragmatic' test to determine whether claims are part of the same transaction for *res judicata* purposes, examining whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." Sheffield v. Sheriff of Rockland Cty. Sheriff Dep't, 393 F. App'x 808, 811 (2d Cir. 2010).

There seems little question that plaintiffs' prior Article 78 proceedings satisfy the broad transactional analysis requirement underlying New York's doctrine of *res judicata*. The instant case and the Article 78 proceedings are predicated on nearly identical facts – implementation of

the vaccine mandate, the rejection of plaintiffs' claimed religious objections, and their subsequent termination. Both DiPierro's and Zweig's courts dismissed their respective claims on the merits. The defendants-respondents in the Article 78 proceedings substantially overlap with those sued here, and to the extent they do not, they are clearly in privity with them. See Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 285 (2d Cir. 2000) (because "[i]t is well settled in this circuit that literal privity is not a requirement for res judicata to apply," an action involving an employer and its employees sued in their official capacities involves the "same parties" as a prior hybrid Article 78 action involving defendants' employers alone).

The only significant difference goes to the nature of Article 78 proceedings as contrasted with plenary actions. Article 78 subsumes and replaces a number of common law writs like mandamus and prohibition. Available relief under that Article thus requires public officers or entities to take action the law requires them to take or to cease action that the law forbids. N.Y. C.P.L.R. § 7801. It allows only incidental damages. Id. § 7806. For these reasons, the Second Circuit has often stated that *res judicata* "does not operate to bar a § 1983 suit following the resolution of an Article 78 proceeding, since the full measure of relief available in the former action is not available in the latter." Colon v. Coughlin, 58 F.3d 865, 870 n.3 (2d Cir. 1995), abrogated on other grounds, Tangreti v. Bachmann, 983 F.3d 609 (2d Cir. 2020); Davidson v. Capuano, 792 F.2d 275, 278-80 (2d Cir. 1986). In this way, an Article 78 proceeding can be viewed as an exception to *res judicata*, or it may reflect an instance where the third requirement for *res judicata* – that the claims asserted in the later action could have been asserted in the prior action – is not satisfied.

There is, however, an exception to this exception. Nothing in New York practice prevents a petitioner from bringing plenary claims in the same proceeding as Article 78 claims –

that is, joining a plenary action with an Article 78 proceeding. That is referred to in New York practice as a "hybrid Article 78 proceeding." See Coleman v. Daines, 19 N.Y.3d 1087, 955 N.Y.S.2d 831 (2012) (discussing a "hybrid CPLR article 78 proceeding and 42 USC § 1983 action"). It occurs either when a petitioner seeks relief not available under Article 78, see Corbett v. City of New York, 816 F. App'x 551, 554 (2d Cir. 2020), or asserts additional claims besides an Article 78 claim. See Sheffield, 393 F. App'x at 812.

The Second Circuit has explained that in a hybrid Article 78 proceeding, unlike an unmixed Article 78 proceeding, the normal rules of *res judicata* apply, since the hybrid proceeding is not limited to the narrow relief otherwise available under Article 78. In Sheffield, for example, the petitioner's Article 78 proceeding for employment discrimination and libel arising out of her termination had not only sought reinstatement, an Article 78-type remedy, but money damages for defamation and violations of Title VII, and the state court had "adjudicated it as such." Sheffield, 393 F. App'x at 812. The Second Circuit therefore held that the judgment in the Article 78 proceeding barred the subsequent federal action.

Similarly, the plaintiff in Corbett brought an Article 78 proceeding against the City when it denied him a handgun permit. But he sought not only to compel the issuance of a permit under Article 78 – he also sought a declaration that the City's licensing scheme was unconstitutional and to compel production of information about the licensing process under New York's Freedom of Information Law. Because neither of those remedies is available under Article 78, the Second Circuit had no difficulty finding that he had brought a hybrid action which barred his subsequent § 1983 claims for damages in federal court:

> Corbett therefore (a) could have raised his § 1983 claim, based on the same transaction, in that hybrid proceeding, and (b) did, in fact, raise his facial challenge. Accordingly, both the proposed § 1983 claim and facial challenge

> constitute "issues that were or could have been raised" in the hybrid proceeding. We therefore conclude that Corbett's claims – including those in his proposed amended complaint – are barred by *res judicata*.
>
> Corbett's arguments challenging this conclusion on the basis that the state claims rendering his state action a hybrid proceeding were not damages claims are meritless. *Res judicata* bars all claims that could have been raised, not just those actually raised.

Corbett, 816 F. App'x at 554 (cleaned up). Applying these authorities to the instant case, I find that plaintiffs each brought a hybrid Article 78 proceeding in which they either did or could have brought the identical claims they have brought here.

DiPierro expressly labeled his pleading "Petition and Complaint." This is significant because the initial pleading in an Article 78 proceeding is a "petition" while the initial pleading in a plenary action is a "complaint." See N.Y. C.P.L.R. §§ 304(a); 401. In addition, he expressly invoked 42 U.S.C. § 1983 and included a claim under the Free Exercise clause of the First Amendment. He also sought attorneys' fees under 42 U.S.C. § 1988. The fact that he sought only declaratory and injunctive relief rather than damages did not de-hybridize his proceeding because, as the Second Circuit noted in Corbett, *res judicata* bars not only claims that were brought, but claims that could have been brought. See 5055 N. Boulevard LLC v. Inc. Vill. of Old Brookville, No. 19-cv-3598, 2020 WL 6545897, at *4 (E.D.N.Y. Nov. 6, 2020).

Zweig's action, although asserting non-Article 78 claims only under the New York Constitution, was also a hybrid Article 78 action for similar reasons. Putting aside her discussion of United States Supreme Court and other federal authority to explain how her right to freedom of religion had been violated, she expressly asked for "compensatory damages for back pay, front pay, past and future employment benefits, damages for emotional distress, [and] punitive and/or exemplary damages." Consequential and punitive damages are quintessential forms of relief not available in an Article 78 proceeding. Once Zweig crossed that line, having joined a

plenary action with her Article 78 claim, she plainly could have brought her claims under the First Amendment to the United States Constitution in the same hybrid proceeding.

The only remaining question is whether either of the Article 78 courts, in their respective decisions, somehow carved out or otherwise reserved decision on plaintiffs' plenary claims. The law is clear that if a court does so, *res judicata* will not apply to the claim excluded from the decision. See Stolberg v. Members of Bd. of Trustees for State Colleges, 541 F.2d 890, 893 (2d Cir. 1976) ("it is difficult to understand how the general *res judicata* rubric, which precludes what 'might' have been pleaded, can now be raised when the issue was deliberately eliminated from the case."). But that did not happen here. Both courts discussed the plenary claims and dismissed the pleadings in which they were raised on the merits. Although it is common practice in state court hybrid proceedings to rule on part of a hybrid case and sever the remaining part for further discovery, see Best Payphones, Inc. v. Dobrin, 410 F. Supp. 3d 457, 509 (E.D.N.Y. 2019) (citing Parker v. Blauvelt Volunteer Fire Co., Inc., 93 N.Y.2d 343, 347, 690 N.Y.S.2d 478, 481 (1999) ("Plaintiff commenced the instant plenary action under 42 U.S.C. § 1983 in order to litigate the civil rights claims for damages that were severed from the prior [Article 78] proceeding."); Powell v. City of New York, 16 Misc. 3d 1113(A), 847 N.Y.S.2d 898, 2007 WL 2108133, at *4 (N.Y. Sup. Ct. 2007) ("[T]he first cause of action of the petition-complaint is severed, and the Article 78 petition is denied and the proceeding is severed and dismissed."), neither state court did that here. Nor did either state court "dismiss[ ] the Article 78 claims when brought in a hybrid fashion." Best Payphones, 410 F. Supp. 3d at 509-10 (citing Krol v. Zoning Bd. of Appeals of the Vill. of Mamaroneck, 924 N.Y.S.2d 310, 2011 WL 499212, at *1 (N.Y. Sup. Ct. 2011) (denying a motion "to convert certain portions of his Petition to a plenary action

for declaratory relief and to amend the Petition.”)). Plaintiffs’ claims therefore were fully adjudicated on the merits in the hybrid Article 78 proceedings.

Plaintiffs’ remaining attempts to cast doubt on the legitimacy and scope of the underlying state court proceedings fall flat. Their argument that the state court decisions amounted to “judicial atrocities” is frivolous and – to the extent plaintiffs imply that *res judicata* would not apply if the state courts had reached the wrong outcome – legally incorrect. See Hayden Cap. USA, LLC v. Northstar Agri Indus., LLC, No. 11-cv-594, 2015 WL 5698543, at *8 (S.D.N.Y. Sept. 25, 2015) (“the *res judicata* effect of [a] state court judgment is not altered by the fact that the judgment may have been wrong”). Plaintiffs’ remedy for an incorrect decision is an appeal, not a duplicative action. And their argument that they could not have brought their § 1983 claims in the state court proceedings because they had not exhausted their administrative remedies is also misguided. See Winters v. Meyer, 442 F. Supp. 2d 82, 88 (S.D.N.Y. 2006) (“The Supreme Court and the Second Circuit have made clear that a § 1983 plaintiff is not required to exhaust state administrative remedies before bringing her claim.”). Plaintiffs could have asserted the same claims in state court, so those claims, like the ones actually asserted in the state actions, are barred by *res judicata*.

## CONCLUSION

Defendants’ motions [18] [23] to dismiss are granted on the ground of *res judicata*. The Court therefore need not reach defendants’ alternative arguments.

**SO ORDERED.**

Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
February 14, 2024